*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AAHP, Minor.

UNPUBLISHED
April 10, 2026
10:32 AM

No. 377155
Oakland Circuit Court
Family Division
LC No. 2021-882876-NA

Before: YOUNG, P.J., and MARIANI and BAZZI, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to AAHP under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continued to exist); MCL 712A.19b(3)(g) (parent fails to provide proper care or custody although able to do so); and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose when respondent arrived in Michigan from Minnesota and confronted her former boyfriend about their relationship in January 2021. The former boyfriend called the police, and police removed respondent from the property and ticketed her for trespassing. The next day, respondent returned to the former boyfriend's home twice and was again arrested for trespassing. AAHP, then age six, was with respondent each time she trespassed.

Petitioner, the Department of Health and Human Services (DHHS), filed an emergency order for custody of AAHP, which was granted. DHHS placed AAHP with a foster family, and DHHS filed a petition for custody of AAHP. Respondent pleaded no contest to the facts in the petition admitting she traveled to Michigan with no plans or resources. The trial court ordered respondent to complete a parent-agency treatment plan (PATP), which required respondent to: (1) undergo a psychological evaluation and follow the recommendations; (2) complete parenting classes; (3) obtain and maintain a legal source of income; (4) live a lawful lifestyle; (5) maintain communication with DHHS; and (6) maintain safe and suitable housing for herself and AAHP.

-1-

Respondent underwent a psychological evaluation and was diagnosed with bipolar I disorder with psychotic features. The evaluation recommended long-term individual therapy and psychiatric medications. Respondent initially struggled with the PATP and moved back to Minnesota and then to Georgia. Once respondent returned to Michigan, she became compliant with her PATP and consistently attended parenting time. Respondent became employed and obtained a suitable apartment for her and AAHP. The trial court noted respondent's progress and compliance and ordered overnight parenting time with AAHP.

Overnight parenting time went well until respondent stopped taking her medications. During one overnight parenting time, respondent forced AAHP to run sprints for hours in the middle of the night despite AAHP asking her to stop. Respondent was later hospitalized for mental-health concerns. The trial court suspended parenting time until respondent was discharged and attended outpatient services. After respondent was discharged, she contested her bipolar diagnosis and claimed she did not need medication, stating she was treating herself with homeopathic treatments she created.

DHHS filed a supplemental petition on February 17, 2023, seeking termination of respondent's parental rights to AAHP under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*) (other conditions exist to cause the child to come within the court's jurisdiction), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). Respondent was not present at the statutory-grounds hearing but her attorney was present. Multiple people placed on the record that they had spoken with respondent, and that she knew of the hearing. A representative from Bethany Christian Services (BCS) said that respondent called that morning stating she would be at work and not at the hearing. AAHP's therapist discussed his progress and her concerns regarding respondent. The therapist noted AAHP grew disinterested in parenting time, reporting respondent did not listen to him or want to have a conversation with him. The therapist explained respondent's instability and impulsivity would subject AAHP to high-risk situations. AAHP's foster mother echoed the therapist's concerns, noting respondent would not listen to AAHP during parenting time, which upset AAHP.

The case manager from BCS testified AAHP was in DHHS's custody for 999 days at the time of the hearing and respondent was noncompliant with her PATP, specifically with her mental-health requirements. Respondent did not engage in therapy and refused to take her medications. Respondent also failed to maintain a stable income and housing. The trial court found statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (g), and (j).

At the best-interests hearing, AAHP's therapist explained AAHP desired stability. AAHP reported he loved respondent but was saddened and confused by their relationship. AAHP was also upset with the time it was taking respondent to become compliant with her PATP and did not think reuniting with respondent was good because of her instability. The therapist recognized the bond between respondent and AAHP but described that bond as unhealthy, citing AAHP's need to be the caretaker in the relationship.

Respondent underwent another psychological evaluation, which noted her untreated bipolar disorder prevented her from achieving stability. The evaluator testified respondent did not take steps to correct her behavior, such as complying with her medications or attending therapy. The case manager explained AAHP was excited for adoption, because he wanted to move on with

his new life and family. The trial court determined termination was in AAHP's best interests, citing: (1) respondent's failure to manage her mental health; (2) respondent's instability; and (3) AAHP's desire for permanence and stability, which was provided to him by his adoptive family. This appeal followed.

## II. STATUTORY GROUNDS

Respondent claims the trial court reversibly erred when it determined that a statutory ground for termination existed. We disagree.

## A. STANDARD OF REVIEW

"We review for clear error a trial court's decision that a statutory ground for termination has been proved by clear and convincing evidence." *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## B. ANALYSIS

Respondent claims the trial court erred when it determined there were grounds to terminate her parental rights. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "The clear and convincing evidence standard is 'the most demanding standard applied in civil cases[.]' " *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020), quoting *In re Martin*, 450 Mich 204, 277; 538 NW2d 399 (1995) (alteration in original).

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

For termination to be proper under MCL 712A.19b(3)(c)(*i*), DHHS must demonstrate " '182 or more days have elapsed since the issuance of an initial dispositional order,' that the 'conditions that led to the adjudication continue to exist,' and that 'there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.' " *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), quoting MCL 712A.19b(3)(c)(*i*).

At the termination hearing, the case manager noted AAHP has been in the custody of DHHS for 999 days. The case manager explained respondent was diagnosed with bipolar I disorder but contested her diagnosis. Respondent believed she could manage her mental-health issues on her own and never remained compliant with her medications, despite the recommendations of multiple psychological evaluations. Respondent was voluntarily and involuntarily hospitalized multiple times during this case. There was sufficient evidence establishing respondent was not compliant with her therapy or medication requirements. Respondent did not rectify the issues that led to adjudication. Additionally, respondent expressed her belief she did not need mental-health treatment multiple times, demonstrating the reasons leading to adjudication would continue to exist.

Respondent struggled to maintain stable housing and employment. Respondent obtained an apartment but frequently moved. Respondent returned to Minnesota at the start of the proceedings and moved to Georgia twice. Respondent also moved to Washington D.C. before the termination proceedings. While in Michigan, respondent lived in Owosso, Detroit, and multiple shelters. Respondent was able to maintain stable employment at Challenger for a time, but she left that job once she moved out of state. Respondent was a postal worker but admitted she left that position. Respondent was licensed as a certified nursing assistant in Georgia but never discussed employment. Respondent was employed by her uncle's trucking company but never discussed her employment or provided verification of her income to DHHS. While respondent was employed periodically, she failed to maintain stable employment and income. Respondent was also partially compliant with some of her PATP as she communicated with DHHS and completed parenting classes. In short, we agree that respondent demonstrated an "ability and willingness to comply with services."[1] The trial court praised those efforts. However, respondent became noncompliant with her PATP and contested her bipolar diagnosis and her need for medication.

The trial court was aware of respondent's progress with the PATP, but respondent was noncompliant with it at the time of the termination proceedings. At the time of the hearing, AAHP had been in custody of the trial court for almost 1,000 days, which was beyond the 182-day requirement in MCL 712A.19b(3)(c)(*i*). There was no evidence respondent would become compliant within a reasonable time given AAHP's expressed desire for permanency and stability and respondent's assertion she did not believe she needed mental-health care. Further, respondent failed to demonstrate the conditions that led to adjudication were resolved. As such, the trial court did not err when it found statutory grounds existed under MCL 712A.19b(3)(c)(*i*). Because the

---

[1] Respondent states in her brief that this willingness was "without adequate assistance from DHHS" but does not develop the argument further and even if she had, we disagree. Respondent's PATP was implemented in March 2021, and respondent was fully compliant for only a portion of this case. Even assuming DHHS provided inadequate services after respondent's return to Michigan in June 2023, respondent was noncompliant with her PATP since October 2022. There was no evidence respondent would have engaged in the services if offered, because respondent demonstrated habitual noncompliance. Respondent frequently moved and sometimes moved to different states. Respondent also expressed her belief she was not bipolar and did not require therapy or medication. AAHP's therapist and respondent's psychological evaluator testified respondent's untreated bipolar disorder prevented her from maintaining stability, which impacted respondent's ability to maintain employment and housing.

Even if respondent engaged in services for employment and housing, her PATP required her to follow the recommendation of her psychological evaluation. Respondent's April 2021 evaluation recommended long-term individual therapy and psychiatric medication, but respondent continually denied her diagnosis and treatment. Respondent would thus be noncompliant with her PATP regardless of her employment status or housing situation.

trial court only needs to find one statutory ground for termination, this Court does not need to address respondent's remaining arguments. *In re Moss*, 301 Mich App at 80.[2]

### III. BEST INTERESTS

Respondent claims the trial court erred when it determined termination was in AAHP's best interests. We disagree.

### A. STANDARD OF REVIEW

This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (cleaned up).

### B. ANALYSIS

"[O]nce a statutory ground for termination is established, the trial court must then determine whether termination is in the best interests of the child." *In re Moss*, 301 Mich App at 86. The trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). " 'The focus at the best-interest stage has always been on the child, not the parent.' " *In re Atchley*, 341 Mich App at 346, quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

---

[2] We note, however, that the record does not appear to support the conclusion that statutory grounds existed under MCL 712A.19b(3)(g). That subsection requires that "[t]he parent, although, in the court's discretion, *financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) (emphasis added). There was seemingly no showing or finding in this case that respondent was financially able to provide proper care or custody for AAHP; to the contrary, the trial court expressly found that respondent had "not provided any . . . documentation that she has an appropriate income to financially provide for [AAHP]." It thus appears the court erred by concluding that MCL 712A.19b(3)(g) was satisfied. We do not, however, see error in the court's conclusion that MCL 712A.19b(3)(j) was satisfied, given that (1) respondent's untreated mental-health issues resulted in one instance of emotional harm to AAHP when respondent forced him to run in the middle of the night, (2) AAHP's therapist reported AAHP suffered from post-traumatic stress disorder and was triggered by respondent's argumentative behavior, and (3) AAHP's therapist and respondent's psychological evaluators determined respondent's untreated bipolar disorder prevented her from providing a stable environment for AAHP and would subject AAHP to situations with a high risk of injury. And in any event, as noted, any error in the court's determinations under either of these subsections does not warrant relief, given that the court did not err in finding statutory grounds existed under MCL 712A.19b(3)(c)(*i*). See *In re Moss*, 301 Mich App at 80.

"Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App at 89.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. Specifically:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id.* at 713-714 (quotation marks and citations omitted).]

"Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court 'may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests.' " *In re Atchley*, 341 Mich App at 347, quoting *In re Olive/Metts Minors*, 297 Mich App at 43. However, the "fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Id.* at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the child[]'s placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

Respondent claims termination was not in AAHP's best interests because: (1) her psychological evaluator testified respondent could become a fit parent given the time for treatment; (2) respondent had a bond with AAHP despite the trial court's suspension of parenting time; and (3) respondent did not receive adequate services.

While respondent's psychological evaluator testified respondent could, with time and treatment, eventually become a fit parent, respondent demonstrated she was disinterested in her mental-health care. Respondent asserted her bipolar diagnosis was incorrect and she did not need medication, claiming she created a homeopathic treatment. The evaluator did not know of homeopathic treatments for respondent's mental-health issues. Further, respondent's PATP required respondent to undergo a psychological evaluation, which she did, but it also required respondent to follow the evaluation's recommendations. Respondent's psychological evaluation in April 2021 recommended long-term therapy and psychiatric medication. Respondent was initially compliant, which led to her obtaining overnight parenting time, but later refused to comply with her mental-health requirements. While respondent's evaluator agreed respondent had potential to become a fit parent, her fitness required her compliance with medications and therapy, which respondent demonstrated she was unable or unwilling to do.

Additionally, respondent's psychological evaluations could not provide the time frame it would take for respondent to become fit. AAHP made it clear from early in this case he desired permanency and stability. AAHP's therapist and foster parent testified respondent's instability caused AAHP to worry and caused AAHP to become the caretaker in the relationship. Best-interest proceedings focus on the child. *In re Moss*, 301 Mich App at 89. While respondent may

be able to become fit, the record indicated that when—or even if—that might happen was highly uncertain at best, and AAHP expressed frustration with the time it took respondent to comply with her PATP. There was sufficient testimony establishing AAHP desired permanency, and respondent was unable to provide him that while AAHP's adoptive family did.

Respondent claims she had a bond with AAHP. The trial court agreed, stating: "After hearing all the testimony and reviewing the file this Referee has no doubt that [respondent] loves her son." However, the trial court cited AAHP's concerns with respondent as evidence termination was in his best interests. AAHP reported to his therapist respondent would not listen to him and made him feel uncomfortable. AAHP no longer wished to participate in parenting time and expressed his desire to be adopted to move on with his life.

The trial court cited AAHP's diminished bond with respondent as evidence supporting termination. While the trial court suspended parenting time, it did so when respondent forced AAHP to run in the middle of the night but restored it shortly after resolving the issue. Respondent then left Michigan, which placed a strain on parenting time because respondent was only able to attend remote parenting time. When respondent first left Michigan for Minnesota, AAHP reported feeling upset because he thought respondent left him in Michigan.

While the trial court suspended parenting time, it did so to safeguard AAHP from potential harm. Respondent ignores her own actions regarding parenting, specifically her constant relocations, which upset AAHP. AAHP wanted to continue communicating with respondent but reported he did not feel safe with her. AAHP expressed his desire for stability and permanence, which respondent failed to demonstrate she was able to provide.

Respondent also argues the trial court cited the breakdown in the bond between respondent and AAHP, but the trial court caused as much by suspending parenting time. The trial court suspended parenting time on January 10, 2024, after the statutory-grounds hearing when it determined grounds existed for termination. Respondent had supervised, unsupervised, and overnight parenting time during this case. AAHP reported feeling unsafe during overnight parenting time, citing respondent forcing him to run in the middle of the night. At in-person parenting time, AAHP reported respondent would not listen to him and would become argumentative with the case workers or his foster parents.

AAHP recalled one parenting time where respondent accused him of using a curse word. AAHP denied using the word, and the supervising case worker agreed AAHP did not curse. Respondent yelled at AAHP, and AAHP hid under the table. AAHP's therapist testified AAHP experienced PTSD from respondent's argumentative and confrontational behavior, resulting in a "flashback." Respondent also brought an unidentified man to parenting time and, before termination proceedings, was inconsistent with parenting time. AAHP was upset with respondent and constantly worried about her.

The trial court made efforts to maintain parenting time. The trial court suspended parenting time after the incident where respondent forced AAHP to run but quickly reinstated parenting time because respondent, DHHS, and AAHP requested it. While respondent's parenting time was suspended after the statutory-grounds hearing, there was evidence respondent and AAHP's bond was deteriorating since the beginning of the case. AAHP's therapist noted respondent's bond with

AAHP was strong but unhealthy. As AAHP aged, he realized his relationship with respondent was not healthy for him or her. During the statutory-grounds hearing, AAHP's therapist explained AAHP was no longer interested in parenting time because respondent did not engage with him. There was evidence respondent's bond with AAHP was deteriorating before the trial court suspended parenting time.

Last, respondent contends she was not provided adequate services to comply with her PATP. Respondent was given ample time to comply with the PATP before DHHS filed the supplemental petition seeking termination. The case workers testified to referring respondent for parenting classes three times because of respondent's failure to participate. DHHS sought to implement an interstate compact once respondent left Michigan, but respondent failed to identify the state where she planned to reside and later returned to Michigan. Respondent left Michigan once more during this case. DHHS made it known it was difficult for it to refer respondent for services outside Michigan.

Even if respondent was able to partially comply with the PATP, that is only one factor for the trial court to consider. *In re White*, 303 Mich App at 713-714. The focus of the best-interest hearing was AAHP. *In re Moss*, 301 Mich App at 89. AAHP expressed his desire for permanency and stability multiple times during this case. AAHP's adoptive mother was in contact with AAHP since the adjudication and regularly took care of AAHP before this case began. AAHP wanted to be adopted by her, and evidence established she provided him a stable and safe home. For example, AAHP began struggling with mathematics and his adoptive mother, who was a teacher, researched the topic and developed a plan to help AAHP.

Respondent argues AAHP's placement with his adoptive mother weighed against termination because she was respondent's cousin. Respondent is correct placement with family weighs against termination, but it is not dispositive. *In re Atchley*, 341 Mich App at 347. The trial court could determine termination was still in AAHP's best interests. *Id*. The trial court discussed this issue, noting AAHP was placed with family. However, the trial court determined, from the evidence presented, termination was in AAHP's best interests, citing AAHP's desire for permanency and stability, which his adoptive family could provide. AAHP's adoptive mother was involved in AAHP's life before this case, and AAHP expressed his love for her and her family early on in this case.

The best-interest analysis focuses on the child. *In re Moss*, 301 Mich App at 89. AAHP expressed his desire for stability and permanence, which respondent was unable to provide given her untreated mental-health issues and the amount of time that passed since the initial disposition. Accordingly, the trial court did not err when it determined termination was in AAHP's best interests.

We affirm.

/s/ Adrienne N. Young
/s/ Philip P. Mariani
/s/ Mariam S. Bazzi

-8-